Brossenne, &c, v. Schmitt, &c.

CASE 86—PETITION EQUITY—APRIL 16.

| 91  465
104  483

# Brossenne, &c., v. Schmitt, &c.

### APPEAL FROM KENTON CHANCERY COURT.

1. DEVISE BY TESTATOR OF ANOTHER'S PROPERTY—ELECTION.—If one accepts a benefit under a deed or will, he must adopt the entire instrument and renounce every right inconsistent with it. Therefore, if a devisee accepts a devise of the testator's property to him, he is estopped to claim property of his own which the testator has, by the same instrument, devised to another.

2. SAME.—No election is necessary in such a case, unless the instrument shows a clear intention upon the part of the donor to dispose of the property of another. If, however, such an intention is evident, it is immaterial whether the donor believed the property to belong to him or to another.

3. SAME.—Where the testator owns property jointly with another, and his intention is not clear, the courts incline to the interpretation that he intended to devise only his own interest, and there is no necessity for an election upon the part of the other owner, who receives a benefit under the same will. But if words of description are used, indicating a specific gift of the property, an election becomes necessary.

H. C. THEISSEN FOR APPELLANTS.

This is not a case for election. Before a devisee can be required to make an election the will must clearly show that the testator so intended. (Story's Equity, secs. 1075, 1088, 1089; Adams' Equity, pages 92, 94; Bispham, sec. 303; Pomeroy's Equity, vol. 1, secs. 472, 504; Faris v. Dunn, 7 Bush, 286; Baker v. Red, 4 Dana, 158; Bailey v. Duncan, 4 Mon., 267; Wood v. Lee, 5 Mon., 58; Bryson v. Osenton, 5 Ky. Law Rep., 447.)

WM. GOEBEL FOR APPELLEES.

The will raises a case of election. The law relied upon for appellants has no application here.   (Pomeroy's Equity, vol. 1, sec. 489; Am. & Eng. Cyclopedia of Law, vol. 6, p. 252; Isler v. Isler, 88 N. C., 581; Penn v. Guggenheimer, 76 Va., 839.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Charles Hilbert and his wife owned jointly the two lots of land in contest.  She died intestate.  He sub-

sequently died testate. They had three children, the appellants, Louisa Brossenne and Emma Mahlmann, and the appellee, Carrie Schmitt, who, as the heirs-at-law of their mother, inherited her undivided one-half of the two lots. The father by his will devised them to the appellee, Carrie Schmitt, for life, remainder to her children. He devised other real estate, and also bequeathed personalty, to the other two daughters. The will was probated in June, 1888, and this action was brought by them in May, 1889, against Mrs. Schmitt and her children, claiming by heirship from their mother a third each of her undivided one-half interest in the two lots.

The defense is that the devise to Mrs. Schmitt and her children of the two lots, and the devise of other real estate of the testator to the other two daughters, created a case for an election by them ; and that by accepting the property devised to them, they elected to take under the will, and are now estopped from claiming any interest in the lots devised to their sister and her children.

The language of the devise to the latter is : "I give, devise, and bequeath to my beloved daughter, Carrie Schmitt, lot number one, in Davis' subdivision, in the city of Covington, Ky., and the house thereon, said house being number twenty on the north side of Cross street. Also lot number two, in Davis' sub-division, of Covington, Ky. * * * To have and to hold the same unto her for and during the term of her natural life, with full power to act with, and after her death said property is to go and belong in fee-simple to the heirs of her body in equal portions, share and share alike."

The doctrine of election rests upon the equitable principle that if one accepts a benefit under a deed or will, he must adopt the entire instrument, and renounce every right inconsistent with it. He can not claim under it so far as may be to his advantage, and at the same time reject so much of it as may be to his disadvantage. He can not accept and reject the same instrument. He can not come into a court of justice claiming repugnant rights. Thus, if by one clause of a will a legacy be given to A, and by another clause property belonging to A is given to B, unless A surrenders it to B, he can not have the legacy.

The conditions to the necessity for an election, however, are, first, that the testator shall give property of his own ; and second, he shall profess to also give the property of his donee.

No election is necessary unless the instrument shows a clear intention upon the part of the donor to dispose of the property of another. The language of the instrument must be unequivocal. There must be no doubt as to the donor's design. If the proper interpretation of the clause of donation be doubtful, no necessity for an election arises. It should be enforced only in well defined cases. If, however, such an intention is evident, then it is immaterial whether the donor believed the property to belong to him or to another. One accepting the bounty must take it with any burden the testator may have attached to it.

It was held in the case of Isler v. Isler, 88 N. C., 581, if a testator expresses a manifest purpose of disposing of the property of one to whom he de-

vises property of his own, it is immaterial whether he believed he had title; or, if he have an undivided interest in the property, but devises it specifically, then, in either case, the devisee must elect between keeping his own property, or taking the estate given him under the will. Where, however, the donor has a partial interest in the property, and the donee a partial interest also, and the donor's intention is not clear, the courts incline to the interpretation that he only intended to give his own interest. If he has a partial interest, which may satisfy the terms of the gift, then no equity exists for an election. It will not needlessly be presumed that he intended to dispose of the property of another. Indeed, more than this, it will not be so held unless the intention to do so clearly appears by the use of unequivocal language. (1 Pomeroy's Eq. Juris., secs. 472-3.)

Story says: "It is upon a similar ground that the doctrine of election has been held not to be applicable to cases where the testator has some present interest in the estate disposed of by him, although it is not entirely his own. In such a case, unless there is an intention clearly manifested in the will, or (as it is sometimes called) a demonstration plain, or necessary implication on his part to dispose of the whole estate, including the interest of third persons, he will be presumed to intend to dispose of that which he might lawfully dispose of, and of no more." (2 Story's Equity Jurisprudence, section 1089.)

In the sixth volume of the American and English Encyclopedia of Law, page 252, note 7, under the title "Election," it is said: "Where the donor uses gen-

eral terms, as 'all my lands,' &c., he will be presumed to have intended to give his partial interest only.  *  *  *  But where he uses terms which denote entirety, an election is necessary."

In the case of Isler v. Isler, *supra*, the court uses this language: "Again, it is said that, according to the facts stated, the testatrix had a third interest in the house and lot, having expended that much of her own money in its purchase, and it is insisted that under such circumstances she will not be presumed to have intended to give more than she had a right to.  This, too, is a question of construction for the court, and the case of Padbury v. Clark, 2 Macn. & G., 298, seems to be directly in point, and to lay down the rule correctly.  There it was held that when a man who had an undivided moiety in a house devised it by a particular description, such as 'my messuage,' or 'tenement with the garden thereunto belonging,' the whole was intended to pass."  ·

Again, in Miller v. Thurgood, 33 Beavan, 496: "If a testator, having an undivided interest in a particular property, devises that property specifically, a case of election arises, and the co owner must elect between his own interest in the property and the interest he takes under the will."

The doctrine is fully summarized in section 489 of Pomeroy's Equity Jurisprudence, where the author says: "*Prima facie*, a testator is presumed to have intended to bequeath that alone which he owned, that only over which his power of disposal extended. Wherever, therefore, the testator does not give the whole property *specifically*, but employs *general* words

of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his intent will control. On the other hand, if the testator devises the property *specifically* by language indicating a specific gift of the property, an election becomes necessary. It seems now to be settled by the more recent English decisions that when the owner of an undivided share devises or bequeaths the property by words of description and donation, importing an intent to give the *entirety*, then a case of election is raised against the other co-owner who receives a benefit under the same will. The conclusion which is plainly deducible from these recent decisions in England is, that when a person owns an undivided interest or share in any species of property—a house and lot, a farm, a fund of securities, or a fund of money—and he does not use general words of gift, such as 'all my estate,' 'all my property,' and the like, but purports to give the *whole thing itself*, using language which, by a reasonable interpretation, must necessarily describe and define the whole *corpus* of the thing in which his partial interest exists as a distinct and identified piece of property, then an intention to bestow the whole, and not merely the testator's undivided share, must be inferred, and a case for an election arises. The language of description may be by metes and bounds, or may be by any other form of words which will serve clearly to point out and identify the entire subject-matter."

The case of Penn v. Guggenheimer, &c., 76 Va., 839, and other cases that might be cited, fully support the rule as laid down by this eminent text-writer, and, applying it to the case in hand, we think it manifest the testator intended to devise the entire lots. He substantially says so. He gives their number and location. He expressly mentions the house upon one of them. They are *specifically* described, and evidently given in their entirety to Mrs. Schmitt. The other devisees could not have misunderstood the extent of the devise, and that their property was devised to another. Knowing this they yet elected to take under the will. They did it with their eyes open when they could have declined, and kept their own property. They must have believed that the advantages accruing to them by an acceptance of the provisions of the will outbalanced the loss of their interests in the two lots; and guided by the rule announced in the cases, and by the text-writers above cited, and the list of which, were it necessary, might be further extended, they must be held to have estopped themselves from claiming any interest in them.

Judgment affirmed.